[Sac. No. 824.   Department One.—December 26, 1901.]

## W. W. MONTAGUE & CO. et al., Appellants, v. J. L. LEONARD, Respondent.

VENDOR AND PURCHASER—CONTRACT OF VENDOR TO CULTIVATE LAND—PAYMENT FROM PROFITS—VENDEE'S OPTION.—Where a vendor contracted with the vendee to cultivate the land in grapes, and receive all profits for three years, and thereafter to retain possession and apply all net profits in payment of the purchase money, and to retain a lien upon the land until payment thereof, and to surrender possession when paid from the profits, or when paid any net balance, at the option of the vendee, the contract cannot be construed as an unconditional promise of the vendee to pay the purchase money; and the fact that the land became unprofitable cannot entitle the vendor to enforce payment otherwise than under the terms of the contract. He cannot maintain an action against the vendee to recover the unpaid balance of the purchase money and to enforce his lien.

APPEAL from a judgment of the Superior Court of Madera County. W. M. Conley, Judge.

The facts are stated in the opinion.

Walter H. Linforth, and Linforth & Whitaker, for Appellants.

William M. Cannon, and Cannon & Freeman, for Respondent.

SMITH, C.—The plaintiffs appeal from a judgment for defendant, entered on demurrer to the complaint. The suit was brought to foreclose a lien on land of the defendant for amounts alleged to be due on a` written contract between the parties, of date May 21, 1893. The only question involved is as to the construction of the contract.

By the terms of the contract, the plaintiffs agreed to plant the land described in the contract in Muscat grapes, and to cultivate the same for the period of three years; and the defendant agreed, in consideration of the premises, ''to pay them the sum of sixty dollars (per acre) in gold coin of the government of the United States, . . . said payment to be made in manner hereinafter specified, to wit:—''

The paragraphs of the agreement following (numbered for convenience), provide as follows:—

1. That the parties of the first part shall have the possession and all the profits of the land for the first three years.

2. ''That after the expiration of the period of three years, . . . said parties of the first part may and shall remain in the possession and occupation of said land and premises, and receive all the profits thereof and all the proceeds of the crops raised thereon, until they shall receive from said net profits realized after the expiration of the first period of three years, herein provided for, such sums of money as will make up the sum of sixty dollars per acre, in gold coin, etc., for each . . . acre . . . planted.''

3. That the parties of the first part shall have a lien on the land, ''securing to them the payment of the sum of sixty dollars per acre, in gold coin, etc., to be paid to them by said party of the second part, which said charge and lien shall be and remain upon the said lands until the whole of said sum of sixty dollars per acre shall have been fully paid.''

4. "That the said sum of sixty dollars per acre . . . shall be net to them, and shall be free and clear of any costs, charges, and expenses . . . after the expiration of the first period of three years," etc.

5. "That whenever, in accordance with the terms of this agreement, said party of the second part shall have paid or caused to be paid to said parties of the first part the said sum of sixty dollars, in gold coin, etc., net for each acre of land . . . cultivated and planted" (and shall not be in default on a certain mortgage described), the premises shall be surrendered to him.

6. That at any time the party of the second part—not being in default on the mortgage referred to—"may pay to the said parties of the first part the sum of sixty dollars in gold coin, etc., for each . . . acre which shall have been planted and cultivated as hereinabove provided, and may then take and receive from said parties of the first part the possession of said lands,"—proper credits to be made for moneys received by the parties of the first part; and "all taxes on land or improvements assessed . . . after the expiration of the first period of three years . . . to be paid by the party of the second part."

The plaintiffs entered upon and continued in the performance of the contract up to the time of the filing of the complaint, October 13, 1898. But, as it turned out, the land (with the exception of a trifling amount) yielded no proceeds, and it is alleged that it will be impossible in the future to make it do so. The contention of the plaintiffs is, that the contract is to be construed as obliging the defendant unconditionally to pay them the amounts specified for the cultivation of the land, and that the profitable cultivation of the land having become unfeasible, and the payment in the method provided impracticable, they are now entitled to recover the amount due, and to enforce their lien. The contention of the defendant is, that his agreement was to pay only in the manner provided, which was the view by the court.

The judgment, we think, must be affirmed. The promise of the defendant was to pay the amounts agreed upon in the mode prescribed in the contract,—that is to say, in the mode prescribed in paragraph 2. This is the only mode of payment provided for, except that, by paragraph 6, the option is given

to the defendant to anticipate the completion of the payments thus to be made by payment in cash of the balance due at any time.

We advise that the judgment be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.            Garoutte, J., Van Dyke, J., Harrison, J.